Eunice **BROOME**, Plaintiff–Appellant,

v.

**BI–STATE DEVELOPMENT AGENCY and Grady Alexander, Defendants–Respondents.**

**No. 56648.**

Missouri Court of Appeals, Eastern District, Division Three.

July 24, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 22, 1990.

Application to Transfer Denied Oct. 16, 1990.

---

Stephen H. Ringkamp, St. Louis, for plaintiff-appellant.

Daniel T. Rabbitt, Steven J. Hughes, Michael E. Bub, St. Louis, for defendants-respondents.

GRIMM, Judge.

In this jury tried case, plaintiff Eunice Broome obtained a verdict against defendants Bi–State Development Agency and Grady Alexander. Defendants' after-trial motion sought a judgment notwithstanding the verdict or, alternatively, a new trial.

The trial court denied the JNOV but granted the motion for new trial. In sustaining the new trial motion, the trial court specified three grounds for its action. Those grounds are (1) erroneous admission of evidence, (2) error in giving plaintiff's verdict directing instruction, and (3) error in giving plaintiff's definition of right-of-way instruction.

Plaintiff's brief contains three points relied on. These points contend that the trial court did not commit the errors given as a basis for the granting of a new trial. Defendants contend that plaintiff did not make a submissible case. We affirm.

## I. Submissible Case

■ We first consider defendants' contention that plaintiff "failed to make a submissible case against [defendants] on any alleged theory pleaded or submitted." Plaintiff pled both "failure to keep a careful lookout" and failure "to yield the right-of-way." Those allegations were in her verdict directing instruction. Thus, the pleading and submission were consistent.

### A. Factual Background

The question then is narrowed to whether the evidence supports those two allegations of negligence. We state the evidence in the light most favorable to the plaintiff, disregarding all contrary evidence.

On June 20, 1985, Alexander was a Bi–State bus driver. His bus was westbound on Washington Avenue. At the northeast corner of Washington and Fourth Street, near Trader Vics, he stopped to discharge and receive passengers.

Deloris Counsell was a passenger in a car behind the bus. She testified that the traffic light for the bus was green while the bus was unloading passengers. Then, "the light turned yellow and the bus start-ed to take off and he entered the intersection, went across the road and [plaintiff] stepped down and he hit her with the front right side of the bus."

Later, she was asked: "And what, if anything, did you see about these lights while the bus was traveling through the intersection?" She replied: "They changed to red."

A St. Louis City traffic engineer testified about the timing of the traffic lights at this intersection. For traffic going the direction the bus was traveling, the light would be yellow for four seconds, then would change to red.

This engineer also testified about the "walk lights" for pedestrians. For pedestrians crossing the direction plaintiff was going, the light would be "don't walk" while westbound vehicle traffic had either a green or yellow light. As soon as the yellow traffic light turns red, the "don't walk" light changes to "walk." This is an instantaneous change.

Plaintiff has no memory of any part of that day. Another witness, however, testified that she came up behind plaintiff. Plaintiff was standing on the northwest corner of this intersection, "in line with the crosswalk." The light then said "don't walk." After "waiting a minute," the witness and plaintiff started to walk across Washington. The bus hit plaintiff.

### B. Careful Lookout

Defendants contend that plaintiff's evidence failed to show that Bi–State's driver could have seen plaintiff "in time to have taken effective precautionary action."

In *Foster v. Farmers Ins. Co., Inc.*, 775 S.W.2d 143 (Mo. banc 1989), our supreme court recognized several principles in "lookout" cases. Among those was that a driver has "a duty to take effective precautionary action 'when a person, in the exercise of the highest degree of care, would have reason to anticipate danger.'" *Id.* at 144, quoting *Thomas v. Wade*, 361 S.W.2d 671, 674 (Mo. banc 1962). "The driver's obligation to maintain a lookout extends to [pedestrians] regardless of whether they

are standing upon the shoulder, or upon the traveled part of the roadway." *Foster*, 775 S.W.2d at 144 (citations omitted).

*Foster* also recognized the requirements for submission of the lookout theory of negligence. First, there must be "substantial evidence from which a jury could find that the driver, in keeping a careful lookout, could have seen the plaintiff in time to have taken effective precautionary action." *Id.* Second, there "must also be evidence that the driver had the means to avoid the collision and failed to use them." *Id.*

Here, the evidence discloses that plaintiff was standing on the sidewalk. The most favorable testimony concerning her leaving the sidewalk and walking into the street was given by the bus driver. The bus driver "saw her immediately after [he] crossed the light, just about the time [he] crossed the intersection then [he] saw her step off." In deposition responses offered into evidence, he said that she took about two to three steps away from the curb.

The driver's deposition responses also reflected that plaintiff was 25 or 30 feet west of the crosswalk when he first saw her. In those same responses, he also said she was 25 feet from the front of the bus when he first saw her. As to the speed of the bus, the driver testified to "about ten miles an hour," but his deposition answer was "between five and ten."

We reconcile the estimates in a manner most favorable to the verdict. The jury could have believed that plaintiff took 3 steps from the curb out into the street. While she was taking those 3 steps, the bus driver could have seen her; he testified he saw her when the bus was at least 30 feet away from her. At that time, the bus was traveling at a speed of 5 miles per hour, or 7.3 feet per second. Thus, the driver had about 4 seconds while the bus traveled the 30 feet.

Judicially noticed reaction time has consistently and repeatedly been 0.75 seconds. *Morgan v. Toomey*, 719 S.W.2d 129, 137 (Mo.App.E.D.1986). At 7.3 feet per second, the bus would travel about 5.5 feet before the driver could apply the brakes. If the brakes were then applied, the bus would have almost 25 feet to stop and avoid hitting plaintiff.

The brakes on the bus were working. By applying the brakes, the driver could have avoided striking plaintiff. Under these facts, plaintiff made a submissible case of failure to keep a lookout.

### B. Right-of-Way

■ Counsell testified that the traffic light for the bus changed from green to yellow at some point right before the bus started up, or possibly "during the take off." She also said that the light turned red while the bus was crossing the intersection.

The traffic engineer said the light for the bus would have been yellow for 4 seconds. It would then have turned red.

At a speed of 5 miles per hour (7.3 feet per second), it would take the bus about 7 seconds to cross a 50–foot intersection. Again, we view the facts in the light most favorable to the verdict. The light was yellow when the bus started up. The driver had the yellow light for 4 seconds. During that yellow light, the bus travelled about 29 feet. For the remaining 21 feet, the bus had a red light.

The instant the bus driver had a red light, plaintiff had a "walk" light. Plaintiff was entitled to "proceed across the roadway in the direction of the signal and shall be given the right-of-way by the drivers of all vehicles." § 304.291.* Plaintiff made a submissible case of failure to yield the right-of-way.

The trial court did not err in overruling defendants' motion for JNOV.

### II. Prior Consistent Statement

■ We turn now to plaintiff's first point. She contends that a prior consistent statement was admissible and the trial court erred in granting a new trial on the basis that the statement was erroneously received.

---

* All statutory references are to RSMo 1986.

## A.

On direct examination, Counsell testified that the "light turned yellow and the bus started to take off." Further, she said the light "changed to red" while the bus was traveling through the intersection.

Also, on direct examination, she acknowledged talking to the police. She said they asked if plaintiff stepped "down from the curb and [she] told them yes." She said the police did not ask her what color the light was for the bus.

On cross-examination, Counsell said she "did not tell the Police Officer the light was green." Defendants' attorney then read a portion of a police report, which included the statement "all witnesses said the traffic light was green for the bus." Defendants' attorney then asked Counsell if she was denying telling the officer that the bus had a green light. She replied, "I did not tell the officer that."

Defendants' attorney also asked Counsell if she had been contacted by plaintiff's son after the accident. She said she had and that they had two or three conversations about plaintiff. No questions were asked about the content of those conversations.

Counsell was subjected to redirect, recross, and further redirect examination. In those examinations, no further questions were asked relating to conversations with the police or with plaintiff's son.

Later in plaintiff's case, plaintiff's son testified that he talked with Counsell within two weeks after the accident. Defense counsel objected to anything Counsell told son. A colloquy which consumes 12 pages in the transcript then took place. In that colloquy, there was considerable discussion of prior consistent and prior inconsistent statements. The trial court overruled defendants' objections.

Son then testified that Counsell told him that "the bus started off from a dead stop and [she] saw that the light was yellow." Further, son testified that Counsell said the car in which she was riding "did not move because from what she said the light was yellow."

In defendants' case, the police officer who talked with Counsell testified. The officer said that he took a statement from her. According to the officer, Counsell told him her husband was dropping her off to go to work. She "observed the victim, Mrs. Broome, step off the curb into the bus and that the victim was facing—was not looking in the direction the bus was coming from but was looking west on Washington and that the bus had proceeded through a green light."

## B.

An examination of Missouri cases reveals fairly well-defined rules concerning the admissibility of prior consistent statements. An excellent discussion of these rules may be found in *State v. Henderson,* 666 S.W.2d 882, 890 (Mo.App.S.D.1984). *See also* Thomas, *Rehabilitating the Impeached Witness with Consistent Statements,* 32 Mo.L.Rev. 472 (1967).

We look only at the rules applicable to the facts before us. First, when a witness is impeached by proof of an inconsistent statement, relevant evidence of the witness' prior statement consistent with his trial testimony is admissible for the purpose of rehabilitation. However, before this rule applies, "it is essential that the witness has been impeached *by proof* of his statements inconsistent with [his] present testimony." *Henderson,* 666 S.W.2d at 890. (emphasis original).

Thus, when, as here, a witness denies making the inconsistent statement, "it is premature for the party sponsoring that witness to offer evidence of a prior consistent statement so long as there has not yet been proof of a prior inconsistent statement." *Id.* at 890–891. For, as this court said in *State v. Earvin,* 539 S.W.2d 615, 616 (Mo.App.E.D.1976), "until a witness is impeached, admission of prior consistent statements is improper and self-serving."

Here, on cross-examination, Counsell denied telling the police officer that the traffic light was green, i.e. she denied making this inconsistent statement. At this point, defense counsel had not proved that Counsell had made the statement. Rather, he

had merely "laid the foundation for impeachment." *Henderson*, 666 S.W.2d at 890. "[A]bsent the introduction of evidence to establish statements contradicting the testimony given by the witness, impeachment resulting from mere cross-examination is insufficient to render admissible prior extrajudicial consistent statements." *McElhattan v. St. Louis Pub. Serv. Co.*, 309 S.W.2d 591, 594 (Mo.Div. 1 1958) quoting *State v. Fleming*, 354 Mo. 31, 188 S.W.2d 12 (Mo.Div. 2 1945).

Counsell had not "been impeached *by proof*" of her statements. It was therefore error to allow plaintiff to introduce son's testimony concerning Counsell's statement to him. Rather, such testimony could have been properly considered (although not admitted) only after the defendants proved the inconsistent statement through the testimony of the police officer to whom she gave the statement.

■ We turn now to the second rule, which has two parts. First, "where the rehabilitating statement was made prior to the impeaching statement, such a statement may be properly admitted for the purpose of rehabilitating the witness." *State v. Haid*, 333 Mo. 1224, 64 S.W.2d 667, 669 (Mo.Div. 2 1933). Second, "where the rehabilitation is subsequent to the impeaching statement, it is not admissible and it is reversible error to admit it in evidence." *Id.* These rules have been consistently followed. *E.g.*, *Ayres v. Keith*, 355 S.W.2d 914, 922 (Mo.Div. 2 1962); *Nielsen v. Dierking*, 418 S.W.2d 146, 149 (Mo.Div. 2 1967); *Galovich v. Hertz Corp.*, 513 S.W.2d 325, 331 (Mo.Div. 1 1974); *Earvin*, 539 S.W.2d at 616; *Henderson*, 666 S.W.2d at 890–891.

We go now to the facts before us. Counsell's first statement, that the light was green, was given to the police officer. Her second statement, that the traffic light was yellow, was given two weeks later to plaintiff's son. At trial, she testified that the light was yellow and denied telling the officer that the light was green. Her statement offered through plaintiff's son was "rehabilitation ... subsequent to the impeaching statement, [and as such] it

[was] not admissible." *Haid*, 64 S.W.2d at 669. It was reversible error to admit it. *Id.*

On appeal, plaintiff contends that plaintiff's son's testimony concerning Counsell's statement "was admissible to rebut the defense accusation that [Counsell] fabricated her trial testimony to 'help out' [plaintiff]." She also contends the statement would "assist the jury in determining whether [Counsell] made the alleged prior inconsistent statement." Finally, recognizing the Missouri rules on these statements, she says those rules "should be abolished."

We first note the timing of the testimony. Plaintiff's son's testimony concerning Counsell's statements occurred in plaintiff's case in chief. At the time this testimony was offered, defendants had not proved that Counsell had made an inconsistent statement.

Defendants objected that the testimony was hearsay and self-serving. Since the inconsistent statement had not then been proved, the objection should have been sustained. The admission of this testimony was "improper and self-serving." *Earvin*, 539 S.W.2d at 616.

Next, we note the colloquy concerning this testimony. The colloquy discloses that plaintiff offered this evidence "to rebut [defendant's] impeachment." Plaintiff also contended that the statement was "not a subsequent statement. This is a statement she made prior to being on the stand so it is a prior consistent statement." Nothing in the colloquy discloses that plaintiff ever offered this evidence to rebut a charge of fabrication, a justification she now asserts.

The admission of plaintiff's son's testimony was not only erroneous, it was prejudicial. His testimony was the only testimony corroborating Counsell's testimony that the light was yellow when the bus entered the intersection.

For the reasons stated, the trial court erred in receiving plaintiff's son's testimony concerning Counsell's statement. When the motion for new trial brought this error to the trial court's attention, the trial court

correctly granted a new trial. Plaintiff's first point is denied.

### III. Verdict Directing Instruction

■ As a new trial is granted, we look briefly at the other two grounds the trial court specified for granting the new trial. First, the court indicated error in giving plaintiff's verdict directing instruction. That instruction was patterned after MAI 37.01 (1986 New), 17.02, 17.05, and 17.08.

In their motion for new trial, defendants alleged that there was no evidence that the bus driver either failed to keep a careful lookout or failed to yield the right-of-way. Further, they alleged that the failure "to yield the right-of-way was an improper submission, since the entire intersection was governed by electric signals."

As stated in section I, plaintiff made a submissible case on both theories of negligence. Under the appropriate standard of review, we find the instruction was proper. *Foster v. Farmers Ins. Co., Inc.,* 775 S.W.2d 143, 144–145 (Mo. banc 1989).

■ We turn now to defendants' allegation that the failure to yield the right-of-way was an improper submission. Defendants do not cite any authority in support of this contention. They merely argue that plaintiff "should have instructed on violation of an electric signal." We, however, do not perceive why failure to yield the right-of-way cannot occur at intersections controlled by electric traffic lights.

### IV. Right–of–Way Definition

As indicated in the previous section, plaintiff's verdict directing instruction was based, in part, on failure to yield the right-of-way. The instruction was patterned after MAI 17.08. Notes on Use to MAI 17.08 mandate an "appropriate right-of-way definition" be given.

Plaintiff submitted, and the trial court gave, this instruction:

> The phrase "yield the right of way" as used in these instructions means a driver of a motor vehicle is required to yield to a Pedestrian about to enter or entering a roadway facing a "walk" signal.

This is a not-in-MAI instruction. Plaintiff based this instruction on § 304.291:

> Whenever special pedestrian-control signals exhibiting the words "Walk" or "Don't Walk" are in place such signals shall indicate as follows:
>
> (1) Walk.—Pedestrians facing such signal may proceed across the roadway in the direction of the signal and shall be given the right-of-way by the drivers of all vehicles.

■ Rule 70.02(e) provides when there is no applicable MAI instruction, a "simple, brief, impartial, free from argument" instruction should be given. In cases involving a statutory violation, it is generally sufficient to couch the instruction substantially in the language of the statute unless the statutory language requires construction. *See Bayne v. Jenkins,* 593 S.W.2d 519, 530–531 (Mo. banc 1980); *Venable v. S.O.R., Inc.,* 713 S.W.2d 37, 40 (Mo.App.W. D.1986).

Here, the instruction given was overly broad and, therefore, erroneous. The error was using the phrase "about to enter or entering." The statute relied on does not give protection to pedestrians "about to enter" a roadway. Rather, the statute authorizes a pedestrian to proceed across the roadway and gives the pedestrian the right-of-way as the pedestrian crosses the roadway. Obviously, if the pedestrian is only "about to enter," the pedestrian is not proceeding across the roadway. In such a situation, yielding the right-of-way does not come into play.

The trial court did not err in granting defendants a new trial. The trial court's order is affirmed.

SATZ, P.J., and SMITH, J., concur.