STATE of Missouri, Respondent,

v.

James A. KARR, Appellant.

No. WD 53995.

Missouri Court of Appeals,
Western District.

April 28, 1998.

Douglas W. Hennon, Coil & Coil, P.C., Jefferson City, for appellant.

Mikeal R. Louraine, Asst. Pros. Atty., Fulton, for respondent.

Before LOWENSTEIN, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

James Karr appeals from his conviction of driving while intoxicated as a prior offender, a class A misdemeanor under § 577.010, RSMo 1994.[1] Mr. Karr was also charged with five counts of second degree assault in violation of § 565.060 but was acquitted of those charges. Mr. Karr raises two points on appeal. First, he contends that the trial court erred by refusing to submit his proposed instruction on the defense of justification because Mr. Karr drove while intoxicated in order to prevent a significant harm, there was no adequate alternative to this course of action and the harm he caused was not disproportionate to the harm avoided. Mr. Karr also contends that the trial court erred in submitting the charge of driving while intoxicated as a separate offense because driving while intoxicated should have been submitted as a lesser included offense of second degree assault.

## Factual and Procedural Background

The events leading to Mr. Karr's conviction are as follows. On May 27, 1996, Mr. Karr and his wife, Sherry, attended a Memorial Day barbecue and party at the rural Callaway County home of Terry and Lee Nadreau, Ms. Karr's sister and brother-in-law. Also in attendance were Tina Jones, Randy Matney, Craig McGuire, and other individuals. The partygoers were gathered outside the Nadreau residence where Mr. Karr's truck was backed up to Mr. McGuire's truck so the tailgates could provide seating for the guests. By all accounts, everyone present had been *drinking* beer or some other form of alcohol for several hours. In particular, Mr. Karr admitted in his testimony that he had consumed four to five beers during the first two hours of the gathering. Although he and his wife testified that he was not intoxicated at the party, other witnesses present at the party opined that Mr. Karr was intoxicated, based on his appearance and demeanor.

At trial, Ms. Jones testified that she had been around Mr. Karr on numerous occasions when he was intoxicated. She testified that when he was sober he was a very nice person, but when he was intoxicated "his whole characteristics change." It was her observation that Mr. Karr becomes very angry when intoxicated and, on the occasion at the Nadreau's, he was in a "jealous rage." This behavior was consistent with Ms. Jones' prior observations of Mr. Karr's tendencies when intoxicated. Ms. Nadreau testified that she had previously seen Mr. Karr intoxicated and that he was intoxicated at the party. She described the difference in his demeanor when intoxicated versus sober as "Dr. Jekyll and Mr. Hyde." She stated that when Mr. Karr was sober, he was "the nicest person you could ever meet," but when he

---

1. All statutory references are to the Revised Statutes of Missouri, 1994 unless otherwise indicated.

was intoxicated, he was "very irate, jealous and belligerent." She also testified that Mr. Karr's behavior at the party was consistent with her prior observations. Mr. McGuire observed that Mr. Karr was slurring his words, had a reddish face and smelled of alcohol. He also observed a "cockiness" about Mr. Karr, which Mr. McGuire associated with his intoxication.

During the evening hours at the party at the Nadreau residence, an altercation occurred. At a little before 7:00 p.m., while everyone was sitting or standing around the pickups, Ms. Karr asked Mr. McGuire for a lighter to light her cigarette because she had forgotten hers. As a result of this interaction, some sort of altercation occurred between Mr. Karr and one or more of the other guests at the Nadreau residence. After this incident, Mr. Karr decided to leave the Nadreau property and drive back to his home in Jefferson City. There was evidence that Mr. Karr was intoxicated at this point.

The testimony at trial conflicted as to what actually occurred during the incident which was sparked by Mr. McGuire's act of loaning Ms. Karr his cigarette lighter.[2] Ms. Jones, Ms. Nadreau and Mr. McGuire testified that Mr. Karr and his wife engaged in both a verbal argument and a physical altercation as a result of Mr. Karr's belief that his wife and Mr. McGuire were flirting with each other. Ms. Jones and Ms. Nadreau described the physical altercation as pushing and "wrestling" with no one on the ground, while Mr. McGuire testified that Mr. Karr and his wife wrestled on the ground and that Ms. Karr hit and kicked her husband during the course of their fight. These same witnesses testified that Mr. and Ms. Karr also engaged in a tug-of-war when Mr. Karr wanted to take the beer that they had brought to the party and that Mr. Karr eventually dumped the beer out onto the patio and jumped on it, crushing the cans. In addition, they related that Mr. Karr intentionally drove his truck through assembled partygoers when he could have taken an unobstructed path to the county road.

Ms. Jones testified that Mr. Karr ran into Mr. Matney, injuring him with his truck, while Ms. Nadreau and Mr. McGuire indicated that Mr. Karr "lunged" his truck at Mr. Matney but did not strike him. Mr. McGuire also stated that when Mr. Karr drove through the crowd, the mirror of his truck hit the Karr's daughter, Holly, on the cheek. After seeing Mr. Karr drive through the gathered people, Ms. Jones went inside the Nadreau's home to call 911. While she was gone, Mr. Karr drove his truck to the end of the driveway and stopped, and Ms. Nadreau and Mr. McGuire went down to the end of the driveway to speak with him. Ms. Nadreau testified that, when she reached the rear of the driver's side of Mr. Karr's truck, he "spun out" and the back side of his truck hit her. She was knocked to the side of the road and was rendered unconscious. Mr. McGuire testified that he went to the driver's side door to confront Mr. Karr about hitting Ms. Nadreau, and Mr. Karr grabbed Mr. McGuire's hand and dragged him alongside his truck as he drove from the Nadreau property. Ms. Jones saw Mr. Karr dragging Mr. McGuire as he drove down the road. Mr. McGuire testified that he punched Mr. Karr in the face until Mr. Karr let go of his arm, causing Mr. McGuire to roll on the pavement of the road.

When Ms. Karr testified, she denied that she had an argument with her husband over her interaction with Mr. McGuire or that she and Mr. Karr had a fight, verbal or physical, over the beer they had brought. Ms. Karr also denied seeing Mr. Karr fight with Mr. McGuire. Ms. Karr claimed that she never saw Mr. Karr hit anyone while driving his truck. Ms. Karr testified that while Ms. Nadreau was chasing Mr. Karr as he drove away, she tripped and fell in the ditch next to the county road.

Mr. Karr testified that Mr. McGuire began "flirting" with Ms. Karr and gave her a cigarette lighter. This angered Mr. Karr and he informed his wife that he was going to leave and, contrary to her wishes, he was taking the beer they had brought with them.

---

**2.** The accounts of these witnesses also varied in numerous aspects from the statements they made in their depositions and other prior statements.

In addition, he said to Mr. McGuire "The next time you come to a party, why don't you bring your own girl instead of trying to hit on mine." Mr. Karr and Mr. McGuire then exchanged hostile words, grabbed each other and fell to the ground between Mr. Karr's truck and the house. While Mr. Karr was on the ground wrestling with Mr. McGuire, an unidentified person or persons kicked him in the head several times. Mr. Karr nearly lost consciousness.

When the kicking stopped, Mr. Karr said to the assembled multitude "You all are crazy. I'm going to get out of here." He then got in his truck and drove toward the back side of the house. Then Mr. Karr backed up, turned around and attempted to leave through an area where some people were standing. As Mr. Karr was driving slowly to the county road, the partygoers were yelling at him and chasing him. Mr. McGuire ran alongside Mr. Karr's truck yelling at him and trying to hit him and reaching inside Mr. Karr's truck to pull him out. Mr. McGuire eventually lost his footing and Mr. Karr made it to the county road and "took off." Mr. Karr then drove to his home in Jefferson City where he called 911 to report that he had been assaulted in Callaway County. When the highway patrolmen arrived at Mr. Karr's house, Mr. Karr learned that someone at the party had also called 911 and reported that he had run into several people with his pickup truck.

Corporal William Lowry of the Missouri Highway Patrol testified that he responded to Ms. Jones' 911 call by going to Mr. Karr's residence in Jefferson City. When Corporal Lowry arrived he identified himself to Mr. Karr. Corporal Lowry testified that Mr. Karr walked toward him with "a wandering plotting gait" instead of "in a purposeful direct manner." Corporal Lowry also observed that Mr. Karr's face was swollen with a blackened eye and he detected a "strong odor of intoxicants about his person." Furthermore, Corporal Lowry indicated that Mr. Karr's eyes were watery and bloodshot and that he had trouble understanding him because "his speech was noticeably thick and slurred." Corporal Lowry arrested Mr. Karr for assault with a motor vehicle and for driving while intoxicated.

Subsequently, Mr. Karr was charged with six counts. The State charged Mr. Karr with two counts of conventional second degree assault under § 565.060.1(2) and two counts of assault under § 565.060.1(4) for causing physical injury to Mr. Matney and Mr. McGuire while driving while intoxicated; one count of conventional second degree assault under § 565.060.1(2) for causing physical injury to Ms. Nadreau; and one count of driving while intoxicated, a class A misdemeanor under § 577.010 because of his prior conviction of that offense. The State alleged in the sixth count for driving while intoxicated that Mr. Karr had previously been convicted of driving while intoxicated on June 28, 1994.

At a jury trial on these charges, the trial court found, prior to submission to the jury, that Mr. Karr was a prior offender because he was convicted of driving while intoxicated in 1994. The jury was not convinced beyond a reasonable doubt of all of the elements of the assault charges, because they acquitted Mr. Karr of the five assault counts. But, they convicted him of driving while intoxicated in violation of § 577.010. Because Mr. Karr was a prior offender, the jury did not decide his punishment and the trial court sentenced Mr. Karr to a one-year term of imprisonment in the Callaway County jail. Mr. Karr filed a timely appeal from his conviction and sentence.

## Standard of Review

On appeal from a judgment in a jury-tried criminal case, this court determines whether there is sufficient evidence from which the jury could have reasonably found guilt. *State v. Hargrave*, 915 S.W.2d 387, 389 (Mo. App.1996). This court accepts as true all evidence tending to prove guilt as well as all reasonable inferences that support the finding. *Id.* All contrary evidence and inferences are ignored. *Id.* This court does not weigh the evidence or determine issues of credibility of the witnesses. *Id.*

## Points on Appeal

### I. Trial Court's Refusal to Instruct on Affirmative Defense of Justification or Necessity

As his first point on appeal, Mr. Karr contends that the trial court erred by failing

to submit to the jury his proposed instruction on the affirmative defense of justification by emergency or necessity to the charge of driving while intoxicated. Mr. Karr alleges that such an instruction was required because he met the three conditions for entitlement to the defense. First, he argues that he drove while intoxicated in order to prevent further serious physical injury to his person as a result of the fight with Mr. McGuire and an unknown person or persons. Second, Mr. Karr contends that there were no adequate alternatives to him driving his truck in an intoxicated condition. Finally, Mr. Karr alleges that the harm he caused by driving while intoxicated was not disproportionate to the physical injury he avoided by doing so.

The trial court is required to instruct the jury on the defense of justification by emergency or necessity under § 563.026 "when the claimed facts and circumstances, if true, are legally sufficient to support the instruction." *State v. Owen*, 748 S.W.2d 893, 895 (Mo.App.1988). The relevant provision of § 563.026 is as follows:

1. Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.

In order for a defendant to be entitled to an instruction on this affirmative defense, the defendant has the burden of producing substantial evidence that he performed the criminal act to avoid a significant harm, that there was no adequate alternative to this illegal conduct and that the harm caused was not disproportionate to the harm avoided. *State v. Smith*, 884 S.W.2d 104, 105 (Mo.App. 1994). "The application of the statutory defense of justification by necessity is limited." *State v. Wyatt*, 800 S.W.2d 480, 481 (Mo.App. 1990).

In determining whether the trial court erred by refusing to instruct the jury on the defense of justification by necessity, this court considers Mr. Karr's testimony as true to see if there is a legal basis for the instruction. *Owen*, 748 S.W.2d at 895. Mr. Karr's testimony, which he claims supported the instruction on justification by emergency or necessity was as follows: Mr. Karr became irritated when his wife and Mr. McGuire were flirting with each other. He decided to leave and take with him the beer he and his wife brought to the party. As he was preparing to leave, Mr. Karr and Mr. McGuire exchanged hostile words, grabbed each other and fell to the ground somewhere between Mr. Karr's truck and the house. While Mr. Karr was on the ground wrestling with Mr. McGuire, someone kicked him in the head several times, and he nearly lost consciousness as a result of these blows.

Whoever was beating Mr. Karr stopped and "backed away." Mr. Karr then got in his truck and drove toward the back side of the house. Mr. Karr backed up, turned around and drove though the area where some people were standing. As Mr. Karr was driving slowly to the county road, the partygoers "were chasing [him] and cussing [him] and everything else." Mr. McGuire ran alongside Mr. Karr's truck yelling at him and trying to hit him and reached inside Mr. Karr's truck to pull him out. Eventually, Mr. McGuire lost his footing and fell, and Mr. Karr drove to his home in Jefferson City where he called 911 to report that he had been assaulted. Mr. Karr explained that he left because he didn't think he should stay around any longer.

Taking Mr. Karr's testimony as true, as we are required to do, *id.*, this testimony does not establish a legal basis to instruct the jury on the defense of justification by emergency or necessity. Mr. Karr failed to satisfy his burden of introducing evidence that the situation developed through no fault of his and that he had no adequate alternatives other than driving while intoxicated. *See id.* Mr. Karr's own testimony was that he was an

equal participant in instigating the fight with Mr. McGuire. Mr. Karr testified that after he and Mr. McGuire exchanged words, they "both grabbed each other and [were] kind of holding onto each other and [they] fell to the ground."

In addition, Mr. Karr testified that he was between the Nadreau house and his truck when he began fighting with Mr. McGuire. After the two of them fell to the ground, an unidentified person or persons kicked Mr. Karr in the head. When the person or persons kicking him "just backed away," Mr. Karr was able to get in his truck in order to leave and drive home to call the police. This evidence indicates that Mr. Karr had adequate alternatives to avoid the situation other than driving while intoxicated. Since the persons hitting and kicking him withdrew, instead of getting into his car, Mr. Karr could just as easily have walked the short distance to the house in order to make the call to 911. *See State v. Farris,* 778 S.W.2d 11, 13 (Mo.App.1989). The only person in the house was Mr. Nadreau and there was no evidence that Mr. Nadreau was involved in any altercation with Mr. Karr. By all accounts, no one pursued him until later when he drove through the crowd. While Mr. Karr was waiting for the police to respond from nearby Holts Summit, he could have waited inside the house or locked himself in his truck without driving. Mr. Karr did not have to drive while intoxicated in order to avoid the situation. *Id.*

 Mr. Karr contends that "it is inconsistent that the court gave a self-defense instruction yet refused to submit justification as an emergency measure" in its instructions to the jury. However, Mr. Karr failed to raise this claim in his point relied on appeal. Issues raised in the argument portion of a brief but not in the point relied on are not preserved for appeal. *Dinwiddie v. State,* 905 S.W.2d 879, 881 (Mo.App.1995). Furthermore, Mr. Karr does not cite any legal authority for his position. "Failure to cite relevant authority preserves nothing for review." *State v. George,* 921 S.W.2d 638, 645 (Mo.App.1996). Therefore, this court need not consider Mr. Karr's claim. Under § 563.026, the trial court properly ruled that

Mr. Karr's claimed facts and circumstances, even if true, did not constitute facts necessary to support a claim of the legal defense of justification or necessity for driving while intoxicated. *Farris,* 778 S.W.2d at 13. Therefore, point I is denied.

## II. Submission of Driving While Intoxicated Charge as Separate Offense

As his second point on appeal, Mr. Karr contends that the trial court erred by submitting the driving while intoxicated charge as a separate count. Mr. Karr alleges that this charge should have been submitted as a lesser included offense under the counts charging second degree assault pursuant to § 565.060.1(4) since that method of assault requires the defendant to drive while intoxicated. Section 565.060.1(4) provides that a person is guilty of the crime of assault in the second degree if "while in an intoxicated condition or under the influence of controlled substances or drugs, [the person] operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any person other than himself." Mr. Karr alleges that he was prejudiced by the driving while intoxicated instruction because, if that charge had been submitted as a lesser included offense, it would have been a class B misdemeanor since the State did not plead a prior offense under the assault counts. Instead, driving while intoxicated was submitted as a separate charge under count VI which pled a prior offense, so Mr. Karr was convicted of a class A misdemeanor pursuant to the punishment enhancement provisions for prior offenders and sentencing was left to the trial judge rather than the jury.

Section 577.010.1 defines the crime of driving while intoxicated as operating a motor vehicle while in an intoxicated or drugged condition. Under § 577.010.2, driving while intoxicated is a class B misdemeanor for first offenses. However, the offense is a class A misdemeanor for prior offenders under § 577.023.2. A prior offender is defined as "a person who has pleaded guilty to or has been found guilty of one intoxication-related traffic offense, where such prior offense occurred

within five years of the occurrence of the intoxication-related traffic offense for which the person is charged." Section 577.023.1(3). In cases of prior or persistent offenders, § 577.023.13 provides that "[t]he court shall not instruct the jury as to the range of punishment or allow the jury, upon a finding of guilty, to assess and declare the punishment as part of its verdict. . . ."

An individual may not be convicted of both driving while intoxicated and assault in the second degree pursuant to § 565.060.1(4) because driving while intoxicated is a lesser included offense of the method of second degree assault criminalized by that statute. *Rost v. State,* 921 S.W.2d 629, 634 (Mo.App. 1996). Here, Mr. Karr was not convicted of driving while intoxicated pursuant to § 577.010 and second degree assault under § 565.060.1(4). In fact, the jury instructions made it clear that the jury could only convict Mr. Karr of driving while intoxicated if it found him not guilty on all the assault charges. The jury's verdict acquitting Mr. Karr of the assault charges but convicting him of driving while intoxicated shows that it had a good working understanding of the instruction.

Before turning to the remainder of Mr. Karr's argument, this court notes that the State may have had the ability to charge Mr. Karr with violating both statutes. The prohibition of *Rost* exists for factual situations where the same conduct of a defendant may establish the commission of different offenses and one offense is included in the other. *Id.;* § 556.041. Here, however, there was evidence that Mr. Karr engaged in different conduct leading to the charged offenses. As for the assault count, there was evidence that Mr. Karr drove his truck while intoxicated on the Nadreau property, injuring several different persons. But Mr. Karr also drove while intoxicated after the events leading to the charge of assault when he left the property and drove to his home in Jefferson City. However, this court does not decide this issue and considers Mr. Karr's argument.

Mr. Karr argues that he was prejudiced by the failure to submit driving while intoxicated as a lesser included offense of second degree assault under § 565.060.1(4) because his pri-

or offense was not specifically pleaded in counts II and V charging assault. Therefore, Mr. Karr argues, had the driving while intoxicated charge been submitted as a lesser included offense of the assault charges, he would have been subject to the punishment for a class B misdemeanor, rather than that for a class A misdemeanor as charged in the separate count VI.

Assuming that Mr. Karr is correct in arguing that the information was defective because it did not charge him as a prior offender under counts II and V, "[n]o indictment or information shall be invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, because of any defect therein which does not prejudice the substantial rights of the defendant." Rule 23.11. The substantial rights which the rules governing informations are designed to protect are: "(1) to inform a defendant of the charges against him so that he may adequately prepare a defense, and (2) to protect the defendant against double jeopardy." *State v. Simpson,* 846 S.W.2d 724, 728 (Mo. banc 1993). Therefore, we must examine the information filed in this case against Mr. Karr in order to determine whether it protected Mr. Karr's substantial rights.

In examining the sufficiency of an information, we do not place undue emphasis on formality. *State v. Daniels,* 655 S.W.2d 106, 107 (Mo.App.1983). "An information is sufficient when it contains all the essential elements of the particular offense and clearly apprises the defendant of the facts constituting that offense." *State v. Woodworth,* 941 S.W.2d 679, 693 (Mo.App.1997) (quoting *State v. Heslop,* 842 S.W.2d 72, 76 (Mo. banc 1992), *cert. denied,* 508 U.S. 921, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993)). Minor defects, particularly in the case of informations charging misdemeanors, are not automatically grounds for reversible error. *State v. Coplin,* 588 S.W.2d 48, 50 (Mo.App.1979).

Here, the State's information charged Mr. Karr with six separate counts. The first five counts were for the class C felony of assault in the second degree, while the sixth count charged Mr. Karr with violating § 577.010 by driving while intoxicated, a class A misde-

meanor due to Mr. Karr's status as a prior offender. Counts II and V were brought pursuant to § 565.060.1(4) and charged Mr. Karr with assault by driving a car while intoxicated. These counts alleged that Mr. Karr, while in an intoxicated condition, caused physical injury to Mr. Matney and Mr. McGuire, in counts II and V respectively, by striking each person with a motor vehicle when operating the vehicle with criminal negligence by driving it too fast into an area where people were standing. In the sixth count, the separate count for driving while intoxicated, the State alleged that Mr. Karr drove a motor vehicle while intoxicated and that he was a prior offender since he was convicted of driving while intoxicated on or about the 28th day of June, 1994.

This information was sufficient to protect Mr. Karr's substantial rights. Mr. Karr was aware of exactly which crimes he was charged with committing, as well as the fact that the State was seeking to charge him as a prior offender. An argument similar to Mr. Karr's has been previously rejected by the Eastern District of this court. In *State v. Hutton*, 825 S.W.2d 883 (Mo.App.1992), the defendant was convicted of first degree assault, armed criminal action, and kidnapping. The trial court sentenced him as a class X offender due to his prior convictions. *Id.* at 888. The defendant challenged the validity of his sentencing because even though he was only charged as a class X offender on the assault count, the court sentenced him as a class X offender on all three counts. *Id.* The defendant contended that he should have only been sentenced as a class X offender on the assault count because the State failed to plead that status with regard to the other two counts. *Id.*

In rejecting this argument, the Eastern District held that there was no notice that the State was charging the defendant as a class X offender on two of the three counts. *Id.* at 889. However, the information was clearly put the defendant on notice that he could be charged as a class X offender on all counts since it stated that the defendant had been convicted of three prior felonies. *Id.* Furthermore, the court held that the defendant failed to show he was prejudiced by the information because he failed to show what he would have done differently had he been charged as a class X offender in all three counts. *Id.* As a result, the court affirmed the convictions but reversed the proceedings for the limited purpose of amending the information, making an appropriate finding on the record that the defendant was a repeat offender, and resentencing.

█ Mr. Karr's situation is similar to the defendant's in *Hutton*. Mr. Karr was not charged as a prior offender with regard to the assault counts. However, it was clear from the language in the information that it alleged a prior driving while intoxicated conviction. From this, Mr. Karr was placed on notice that he was being charged as a prior offender on the offense of driving while intoxicated. *Id.* Furthermore, like the defendant in *Hutton*, Mr. Karr has failed to show what he would have done differently had the State pleaded his prior conviction in each and every count of the indictment. In fact, Mr. Karr admitted his prior driving while intoxicated conviction during his direct testimony. Therefore, whether the State pleaded the driving while intoxicated charge as a separate offense or as a lesser included offense of the assault charge, Mr. Karr was subject to the prior offender provisions and, as a result, the crime was a class A misdemeanor. The information sufficiently gave notice to Mr. Karr of the crimes with which he was charged so as to allow him to prepare an adequate defense and to protect him from double jeopardy.

Although the court in *Hutton* remanded for a resentencing, this is not necessary in this case. Here, the information sufficiently alleges Mr. Karr's prior conviction in pleading the offense of driving while intoxicated, the trial court made a finding before submission that Mr. Karr was previously convicted of driving while intoxicated and it properly sentenced him. Point II is denied.

The judgment of the trial court is affirmed.

All concur.