Alvin Lee HARRISON, Appellant,

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE—INSTITUTIONAL DIVISION, Cary Smith, Bill Himpstead, and M. Brewer, Appellees.

No. 01-95-00549-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 7, 1995.

---

Alvin L. Harrison, Gatesville, for Appellant.

Dan Morales, Jorge Vega, Drew T. Durham, Ann Kraatz, Jeff Millstone, Austin, for Appellees.

HEDGES, COHEN and TAFT, JJ., also participating.

## OPINION

COHEN, Justice.

Harrison appeals the dismissal of his *in forma pauperis* action alleging claims under the Tort Claims Act, the Texas Constitution, and 42 U.S.C. § 1983. We affirm in part and reverse and remand in part.

Appellant is a prison inmate. Appellees Smith, Himpstead, and Brewer are prison guards. Appellant sued for injuries he allegedly sustained while being transported on a prison bus from Huntsville to Gatesville.

Appellant alleged that at 5:30 a.m. on January 21, 1994, he and four other prisoners were placed on a prison bus for transport from Huntsville to Gatesville. Smith and Himpstead operated the bus. All inmates were placed in restraints consisting of leg irons attached to both ankles. A chain attached to the leg irons is brought between the legs and around the waist of the prisoner. Handcuffs placed on the prisoner are secured in a "black box" type device that is then locked in front of the prisoner through a metal device at the waist with a small padlock. While en route to Gatesville, Smith threatened to turn off the heater if the prisoners continued to talk. One inmate, not appellant, responded with a colorful expletive. Appellant alleges Smith then turned the heat off and opened a window and the door for several miles. Appellant was wearing a short-sleeved shirt and no coat. Smith and Himpstead were wearing heavy coats and gloves. The prisoners continued to talk to one another. Eventually, Smith turned the bus around and returned to Huntsville.

Upon returning to Huntsville, the prisoners were removed. Smith, Himpstead, and Brewer had appellant kneel so that the chain connecting the leg irons to the handcuffs could be shortened. As a result, appellant was forced to remain in a bent over position with his wrists and ankles locked together. Appellant alleges that after he and the other prisoners were "hogtied," "Diagnostic Officers assaulted each one of us with kneeing the bodies, striking with fist and literally throwing us on the bus on our heads." Appellant also alleges he "was kneed in the body and hit in the face by an unknown officer which knocked [appellant] down, causing [appellant's] knee to bleed. The same officer threw [appellant] onto the bus and kneed [him] in the rear end, throwing [appellant] onto his head." Allegedly, Smith and Himpstead stood by laughing at the events.

Next, appellant alleges the prisoners were placed on the bus while still in the "hogtied"

position, making it impossible to use the toilet on the bus. When appellant requested to use the toilet, Smith told him "piss on yourself" and began driving slowly in order to bring about that result. Appellant claims that instead of doing so, two prisoners got onto their knees and began to urinate on the floor of the bus. Allegedly, Smith then repeatedly stomped on the brakes causing the two prisoners to tumble into the seats and onto the floor due to their inability to use their hands to brace themselves.

The heat was turned off and cold air was permitted to enter the bus during this time. As a result, appellant was "extremely cold." Appellant also experienced back pain from being "hogtied." Moreover, due to his inability to use the toilet on the bus, his unwillingness to urinate on himself, and his unwillingness to risk injury by urinating on the floor, appellant experienced "extreme anxiety."

Appellant alleges that upon arriving in Gatesville at approximately 11:00 a.m., Smith and Himpstead dragged all the prisoners through the urine on the floor of the bus. The prisoners were then forced to walk in the "hogtied" position for approximately 60 to 75 feet while Smith and Himpstead jeered.

Appellant received medical treatment for the bleeding knee he received during the assault at the diagnostic unit. Upon removal of his handcuffs, appellant noticed cuts and a swollen wrist, in addition to numbness in one hand and several fingers.

Appellant filed a grievance regarding the practice of "hogtying" prisoners, but he alleges "T.D.C.J. sanctioned the actions of the defendants."

## Appellant's Legal Allegations

Appellant sued for damages, pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986), article I, sections 13 and 19 of the Texas Constitution, the eighth and fourteenth amendments to the United States Constitution, and 42 U.S.C. § 1983. Specifically, appellant sought damages from Smith, Himpstead, and Brewer for:

1. negligent use of the security restraints on appellant;

2. mental anguish, pain, and suffering resulting from the misuse of the security restraints;

3. the infliction of cruel and unusual punishment on appellant by using unnecessary force by hogtying him;

4. the infliction of cruel and unusual punishment by depriving the appellant of access to a toilet and forcing him to walk while hogtied.

Appellant sought damages from TDCJ–ID for:

1. "Allowing the negligent use of [security] devices on [appellant] when [appellant] was secured through policy dictate."

2. Mental anguish, pain, and suffering TDCJ–ID knew or should have known appellant would incur through the negligent use of [security] devices.

3. Cruel and unusual punishment in that (1) TDCJ–ID knew or should have known of the unnecessary use of force against appellant; (2) appellant was denied access to the toilet on the bus due to his being hogtied; and (3) appellant was forced to walk while hogtied when he was secured and posed no threat.

4. TDCJ–ID's approval of cruel and unusual punishment of appellant in that: TDCJ–ID knew or should have known appellant would suffer needless pain and anxiety due to (1) his inability to use the toilet and (2) his having to walk while hogtied. Also, appellant was subjected to ankle, wrist, and back pain resulting from the unnecessary use of force.

## Motion to Dismiss

Pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 13.001 (Vernon Supp.1995), appellees moved to dismiss the lawsuit as frivolous, asserting the following grounds:

1. Appellant has not specifically pled facts to overcome TDCJ–ID's governmental immunity.

2. The State must consent to suit and no statutory or legislative consent exists in this instance, nor has statutory or legislative consent been pled.

3. Sovereign immunity bars all state claims against state officials in their official capacities undertaken without the State's consent.

4. Qualified immunity bars this suit because the appellees were acting in their official capacities as employees of TDCJ–ID with the good faith belief that their actions were proper under the United States Constitution and laws of Texas.

5. Quasi-judicial immunity shields appellees from personal liability because their acts were discretionary, in good faith, and within the scope of their authority.

6. Appellant failed to allege the deprivation of a constitutional right to support his § 1983 claim.

7. Appellant's negligence allegations do not constitute a cause of action under § 1983.

8. TDCJ–ID is not a proper party under § 1983.

9. The allegations in appellant's petition are insufficient in substance, manner, and form to state a claim under the Texas Tort Claims Act.

10. Appellant fails to show how and in what manner a condition or use of tangible personal or real property is related to his alleged injuries.

11. Appellant failed to comply with the notice requirement of the Texas Tort Claims Act.

Without a hearing and without stating the basis of its decision, the trial court granted the motion to dismiss.

In his sole point of error, Harrison contends the trial court abused its discretion when it dismissed his lawsuit as frivolous.

### Standard & Scope of Review

A judge may dismiss a suit brought *in forma pauperis* by finding that it is frivolous or malicious. In determining whether an action is frivolous or malicious, the statute allows the judge to consider whether:

(1) the action's realistic chance of ultimate success is slight;

(2) the claim has no arguable basis in law or in fact; or

(3) it is clear that the party cannot prove a set of facts in support of the claim.

TEX.CIV.PRAC. & REM.CODE ANN. § 13.001(b) (Vernon Supp.1995).

█ Case law requires that we consider only the second factor—whether there is an arguable basis in law or fact. *Johnson v. Lynaugh,* 796 S.W.2d 705, 706 (Tex.1990). When, as here, the trial court dismisses without a fact hearing, it could not have determined the suit had no arguable basis in fact. *Hector v. Thaler,* 862 S.W.2d 176, 178 (Tex. App.—Houston [1st Dist.] 1993, no writ). Thus, we must consider whether the trial court properly determined there is no arguable basis in law for the suit. *Johnson,* 796 S.W.2d at 706.

█ A trial court has broad discretion to dismiss under section 13.001. *Brown v. Lynaugh,* 817 S.W.2d 813, 815 (Tex.App.—Houston [1st Dist.] 1991, no writ). We review such decisions only to decide whether the trial court abused its discretion by acting arbitrarily, capriciously, and without reference to any guiding principles. *Pedraza v. Tibbs,* 826 S.W.2d 695, 698–99 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). We will consider each ground in the motion to dismiss.

### Motion to Dismiss Grounds

*Appellant has not specifically pled facts to overcome TDCJ–ID's governmental immunity.*

Citing federal cases, the State argues that appellant has failed to specifically plead facts sufficient to overcome its immunity.

█ Heightened pleading requirements may be enforced in immunity cases in federal

courts. *See Elliott v. Perez,* 751 F.2d 1472, 1476–82 (5th Cir.1985). There are no such requirements in Texas courts. Pleadings "shall consist of a statement in plain and concise language of the plaintiff's cause of action." TEX.R.CIV.P. 45(b). Appellant's original petition complies with rule 45(b). Consequently, this ground does not support the dismissal.

*The State must consent to suit and no statutory or legislative consent to sue the State for damages exists under 42 U.S.C. § 1983, the common law of Texas, or the Texas Constitution, nor has the appellant pled such consent.*

■ First, a § 1983 action against the State is invalid. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). See the discussion *infra,* holding that TDCJ–ID is not a proper party under § 1983; only individuals are. Thus, dismissal of the § 1983 suit against TDCJ was correct.

■ Second, the State has consented to some common-law damage actions by enacting the Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.025 (Vernon 1986). A governmental unit is liable for personal injury caused by a use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. *Id.* at § 101.021(2). With great specificity, appellant alleges TDCJ's actions fall within this waiver of immunity. Thus, the suit against TDCJ under the Tort Claims Act was erroneously dismissed.

■ Third, no implied private right of action for money damages exists under the Texas Constitution. *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 150 (Tex.1995). Therefore, the judge correctly dismissed the suit for damages against the State. However, appellant may sue for equitable remedies under the Texas Constitution. *Id.* at 149. Thus, the court erred in dismissing appellant's claims for equitable relief under the constitution.

*Sovereign immunity bars all state claims against state officials in their official capacities undertaken without the State's consent.*

■ Sovereign immunity protects governments, not individuals. Therefore, sovereign immunity does not justify dismissal of any claims against the individual defendants.

*Qualified immunity bars this suit because the individual appellees were acting in their official capacities as employees of TDCJ–ID with the good faith belief that their actions were proper under the United States Constitution and laws of Texas.*

*Quasi-judicial immunity shields individual appellees from personal liability because their acts were discretionary, in good faith, and within the scope of their authority.*

■ "Qualified immunity" is one of several interchangeable terms, including "quasi-judicial immunity," "discretionary immunity," "official immunity," and "good-faith immunity," describing an affirmative defense for governmental employees sued in their individual capacities. *City of Mission v. Ramirez,* 865 S.W.2d 579, 582 n. 2 (Tex.App.— Corpus Christi 1993, no writ). The elements of the defense are: (1) performance of a discretionary function; (2) in good faith; and (3) within the scope of the employee's authority. *Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex. 1994).

■ Given the allegations in appellant's original petition, which we are bound to take as true in reviewing this dismissal, and the lack of evidence proving that Smith, Himpstead, and Brewer performed a discretionary function in good faith within their authority, we cannot conclude that appellant's action has no arguable basis in law. Consequently, these grounds do not support the dismissal.

*Appellant failed to allege the deprivation of a constitutional right to support his § 1983 claim.*

Appellant alleged that Smith, Himpstead, and Brewer inflicted cruel and unusual pun-

ishment on him by using unnecessary force by hogtying him.

■■■ To state an Eighth Amendment excessive force claim under § 1983, a prisoner must show:

1. force was not applied in a good faith effort to maintain or restore discipline but, rather, was administered maliciously and sadistically to cause harm;[1] and

2. some injury, which need not be "significant."

*Rankin v. Klevenhagen*, 5 F.3d 103, 107–08 (5th Cir.1993).

■■■ Appellant alleged that: (1) the guards tried to "freeze" him and the other prisoners for talking; (2) he was hogtied and then assaulted, resulting in injuries to his wrists, back, and knee; (3) he was not permitted to use the toilet and one guard told him to "piss on yourself"; (4) he was dragged through urine; and (5) he was forced to walk in the hogtied position while guards jeered. These allegations, if true, could show force was not applied in good faith, but, rather, was administered maliciously and sadistically to cause harm, and, in fact, did cause harm. Therefore, appellant has alleged facts supporting a cause of action that cannot be classified as frivolous. Consequently, this ground does not support the dismissal.

*Appellant's negligence allegations do not constitute a cause of action under § 1983.*

■■■ Although this ground is a correct statement of the law, *Daniels v. Williams*, 474 U.S. 327, 331–34, 106 S.Ct. 662, 664–67, 88 L.Ed.2d 662 (1986), it does not render appellant's § 1983 claim frivolous because he also alleged that unnecessary force was intentionally inflicted. The negligence actions were made pursuant to the Tort Claims Act.

Consequently, this ground does not support the dismissal.

*TDCJ–ID is not a proper party under § 1983.*

TDCJ–ID contends that appellant's § 1983 claim against it has no arguable basis in law because it is not a proper party under § 1983.

■■■ Neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will*, 491 U.S. at 71, 109 S.Ct. at 2312. Therefore, TDCJ–ID is an improper party to appellant's § 1983 claim. However, a § 1983 action will lie against these employees in their personal, rather than their official, capacity. Consequently, the trial court properly dismissed appellant's § 1983 claim against TDCJ–ID and against the employees in their official capacities as frivolous, but improperly dismissed the § 1983 suit against the employees in their personal capacities.

*The allegations in appellant's petition are insufficient in substance, manner, and form to state a claim under the Texas Tort Claims Act.*

■■■ A governmental unit is liable for personal injury caused by a use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. TEX. CIV.PRAC. & REM.CODE ANN. § 101.021(2). Appellant alleges he suffered injuries when TDCJ employees Smith, Himpstead, and Brewer, negligently restrained him utilizing security devices. This states a claim against TDCJ under the Tort Claims Act. *Thomas v. Texas Dept. of Criminal Justice, Inst. Div.*, 848 S.W.2d 797, 798 (Tex.App.—Hous-

---

1. The factors relevant in assessing whether force was applied in a "good faith effort to maintain or restore discipline," and not "maliciously and sadistically" to cause harm are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response.
*Rankin v. Klevenhagen*, 5 F.3d 103, 107 n. 6 (5th Cir.1993).

ton [14th Dist.] 1993, writ denied).[2] The employees have no liability under the Tort Claims Act, however, because they are not a "government unit." Consequently, the dismissal of appellant's Tort Claims Act suit against the employees was proper, but it was error to dismiss the Tort Claims Act suit against TDCJ.

*Appellant fails to show how and in what manner a condition or use of tangible personal or real property is related to his alleged injuries.*

Appellant alleged that improper use of the security devices resulted in cuts on his wrists, swelling of one wrist, back pain, and numbness in one hand and several fingers. These allegations show how the use of tangible personal property caused his injuries. Consequently, this ground does not support the dismissal of appellant's suit under the Tort Claims Act.

*Appellant failed to comply with the notice requirement of the Texas Tort Claims Act.*

■ A governmental unit is entitled to notice of a claim within six months after it occurred. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1986). The State contends that appellant did not give notice and, thus, his claim is barred. The State relies on the affidavit of Cynthia N. Milne, a TDCJ attorney, which states that although notices of claims filed pursuant to the Tort Claims Act are kept by her office, a diligent search did not disclose notice of claim, or any record of receipt of such notice, from appellant. Appellant does not contend that he filed formal notice of claim.

However, the notice requirements of section 101.101(a) do not apply if the governmental unit has actual notice of the injury. TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(c). To constitute actual notice under section 101.101(c), a government unit must have knowledge of the injury, its alleged fault in causing the injury, and the identity of the persons injured. *Parrish v. Brooks,* 856 S.W.2d 522, 525 (Tex.App.—Texarkana 1993, writ denied).

■ Appellant alleged that he "filed grievances on the 'hogtying' practice[,] but T.D.C.J. sanctioned the actions of the Defendants." Whether a governmental unit has actual notice of a claim is a question of fact. *Parrish,* 856 S.W.2d at 525. Appellant's allegations that he filed grievances with TDCJ raised the issue of whether the State had actual notice. In neither its motion to dismiss nor in Ms. Milne's affidavit does the State deny that it had actual notice of appellant's claim. Thus, the State did not conclusively prove the absence of actual notice. Consequently, this ground does not support the dismissal.

We hold that the trial court correctly dismissed: 1) the § 1983 suit against TDCJ, 2) the Tort Claims Act suit against the employees, 3) the "constitutional tort" suit for money damages against all appellees. To that extent, the judgment is affirmed.

We hold the trial court erred in dismissing: 1) the § 1983 suit against the employees, 2) the Tort Claims Act suit against TDCJ, and 3) the suit for equitable remedies against any of the appellees. To that extent, the judg-

2. In *Thomas,* an inmate alleged that prison guards' negligent use of leg irons and a lock bar caused him injuries. The trial court dismissed the action as frivolous. The court of appeals found that the inmate, by asserting that he was injured by the guards' use of personal property, pleaded a viable cause of action under the Tort Claims Act. However, the court of appeals also held that the inmate's action had no arguable basis in fact. The court stated that the "acts complained of are common and necessary incidents of the prison environment. To the extent the guards' actions in this case caused injuries exceeding the usual level of discomfort experienced by in-

mates, the injuries suffered by the appellant were *de minimis.*" Finding no abuse of discretion, the court of appeals affirmed the dismissal of the inmate's action. *Thomas* does not control the present case because the basis of the *Thomas* decision was the lack of an arguable basis in fact for the inmate's suit. In the present case, the trial court dismissed the suit without a fact hearing. Consequently, we can affirm the dismissal only if appellant's claim lacks an arguable basis in **law.** *Johnson,* 796 S.W.2d at 706; *Hector,* 862 S.W.2d at 178.

891

ment is reversed and those causes are re-manded.

The judgment is affirmed in part and re-versed and remanded in part.