NO. 07-02-0315-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MAY 12, 2003



______________________________




TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER, APPELLANT



V.



SANDEEP RAO, APPELLEE




_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-517,844; HONORABLE MACKEY K. HANCOCK, JUDGE



_______________________________



Before JOHNSON, C.J., QUINN, J., and BOYD, S.J. (1)

OPINION


 This is an interlocutory appeal from a trial court order overruling a plea to the
jurisdiction and granting a temporary injunction. For reasons we later state, we modify the
temporary injunction and, as modified, affirm the trial court order.

 The suit giving rise to the temporary injunction was brought by appellee Sandeep
Rao (Rao) against appellant Texas Tech University Health Sciences Center (Tech). In the
suit, Rao asserted his free speech rights had been circumscribed by Tech's action in
dismissing him from Tech's School of Medicine and sought equitable relief requiring Tech
to reinstate him. He sought, and obtained, the temporary injunction with which we are
concerned in which Tech was ordered to immediately reinstate Rao "as a student in good
standing."

Factual Background


 In 2002, Rao was enrolled at Tech in the second year of a joint MD/MBA program. 
He also served as a columnist on Tech's student newspaper, the University Daily. On
January 21, 2002, Rao and another student attended an autopsy (2) conducted by Dr. Jerry
Spencer, the director of Tech's Division of Forensic Pathology. Dr. Spencer was also the
Lubbock County Medical Examiner. Prior to attending the autopsy, Rao signed a
confidentiality agreement in which he agreed he would not reveal the name of the
decedent or "discuss the nature of any diagnosis or facts of the case with anyone outside
of the professional staff."

 On January 24, 2002, Rao wrote a column in the University Daily about his autopsy
experience. In the column, with some particularity, he described the date and time of the
autopsy, that it was performed by Dr. Spencer, and the stated cause of death. He also
made some remarks about Dr. Spencer's demeanor as he conducted the autopsy. On
January 27, 2002, Dr. Spencer filed a complaint with Dr. Terry McMahon, the Associate
Dean for Education Programs, in which he alleged that in publishing the column, Rao had
violated portions of the University Code of Professional and Academic Conduct. In
particular, he claimed that Rao had failed to comply with directions of university officials,
had failed to comply with the confidentiality agreement, and had made derogatory remarks
about Dr. Spencer.

 After receiving the complaint, Dr. McMahon notified Rao of the allegations and set
a hearing for February 18, 2002. On February 21, 2002, as a result of the hearing, Dr.
Richard Homan, the Dean of the Schools of Medicine and Biomedical Sciences, notified
Rao that the Hearing Committee had recommended that he be dismissed and that Dr.
Homan saw no reason not to accept the recommendation. Dr. Homan also advised Rao
of his right to appeal the decision to an appeal panel. A hearing was held before the
appeal panel on March 8, 2002. On March 18, 2002, Rao was notified that the appeal
panel had found against him on the charge of unprofessional conduct, had recommended
that Rao receive probation through his third year clerkships and be required to write letters
of apology to the university paper and to Dr. Spencer.

 Additionally, on February 21, 2002, Dr. McMahon formally notified Rao of
allegations against him of academic dishonesty in connection with the alleged offer to
deliver a copy of a past year's neurosciences exam that had not been released as a study
aid. A hearing on that allegation was conducted, as a result of which the Hearing
Committee found against Rao and recommended that he be placed on academic
probation, seek professional counseling, and not be allowed to serve as a peer tutor or
allowed to hold any medical school office. On March 27, 2002, Dr. Homan notified Rao
that the recommended sanctions would be placed immediately in force as interim sanctions
pending any appeal. He also notified Rao of his right to appeal the decision of the Hearing
Committee. Rao chose to appeal and, on April 10, 2002, after an April 3 hearing, the
appeal panel found the evidence was sufficient to show that Rao committed the offense
alleged and upheld the sanctions recommended by the Hearing Committee.

 On April 25, 2002, Dr. Homan issued his final decision on both the academic
dishonesty and unprofessionalism allegations. In doing so, he summarized the findings
of the Hearing Committees and the appeal panels in both cases, and concluded that "in
light of these two, separate, serious incidents," he would dismiss Rao immediately from the
School of Medicine. This, of course, led to the underlying lawsuit and to the issuance of
the temporary injunction before us. 

Questions Presented

 Tech challenges the temporary injunction by presenting four issues for our decision.
Those issues are: 1) the trial court erred in denying Tech's plea to the jurisdiction because
Tech, as a state agency, has sovereign immunity; 2) the injunction is void because it fails
to set forth the reasons for its issuance as required by Rule 683 of the Texas Rules of Civil
Procedure; 3) the trial court abused its discretion in granting the temporary injunction
because Rao failed to establish a probability of recovery; and 4) the temporary injunction
is overly broad and constitutes an unconstitutional prior restraint on speech.

Jurisdiction

 In argument under its first issue, Tech contends that Rao's failure to name an
individual in authority as a defendant in his suit deprived the trial court of jurisdiction to
consider his claim for reinstatement because Tech, as a state agency, has sovereign
immunity against a claim for unlawful actions of its officials. Thus, as no suit of that nature
may be maintained against it, the trial court had no jurisdiction to issue its interlocutory
injunction. In support of that position, Tech primarily relies upon Bagg v. Univ. of Texas
Medical Branch, 726 S.W.2d 582 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.). 
In that case, the plaintiff pled a variety of causes of action arising out of an alleged
wrongful employee termination against both supervisory employees of the University of
Texas Medical Branch and the entity itself. The trial court granted a dismissal and
summary judgment against all the defendants. As relevant here, the appellate court
affirmed the dismissal against the Medical Branch and in doing so, opined in rather broad
language that suits premised upon the alleged unlawful or unauthorized actions of state
officials are not considered acts of the state agency, and because they are not state
actions and the state cannot be a proper party to sue, trial courts have no jurisdiction and
such suits may only be maintained against the individuals who were alleged to have acted
unlawfully. Id. at 585. Rao also cites cases such as Turner v. Texas Dept. of Mental
Health & Mental Retardation, 920 S.W.2d 415, 419 (Tex. App.-Austin 1996, writ denied);
Dillard v. Austin Indep. School Dist., 806 S.W.2d 589, 598 (Tex. App.-Austin 1991, writ
denied); and Battleship Texas Advisory Board v. Texas Dynamics, Inc., 737 S.W.2d 414,
418 (Tex. App.-Houston [14th Dist.] 1987, writ dism'd w.o.j), which cite and rely upon Bagg
in arriving at similar holdings.

 However, in City of Beaumont v. Bouillion, 896 S.W.2d 143 (Tex. 1995), the Texas
Supreme Court had occasion to consider whether there was an implied cause of action for
damages as a remedy for unconstitutional conduct under the free speech and free
assembly clauses of the Texas Constitution. In the course of its opinion, it performed an
historical analysis of such constitutional questions and concluded that although no such
actions for damages may be maintained, aggrieved persons may assert direct claims for
equitable relief against governmental entities for violations of the Texas Bill of Rights. Id.
at 149. Earlier, in Director of Dept. of Agriculture & Environment v. Printing Industries
Ass'n, 600 S.W.2d 264 (Tex. 1980), the court opined that an entity or person whose rights
have been violated by the unlawful action of a state official might bring a suit to remedy
the violation or prevent its occurrence. Id. at 265-66. Indeed, in Alcorn v. Vaksman, 877
S.W.2d 390, 403-04 (Tex. App.--Houston [1st Dist.] 1994, writ denied), and Harrison v.
Texas Dep't of Criminal Justice-Institutional Div., 915 S.W.2d 882, 888 (Tex. App.--Houston [1st Dist.] 1995, no writ), the same court that decided Bagg noted that although
there may not be a cause of action for damages, a plaintiff whose constitutional rights have
been violated may sue for equitable relief. See also Texas State Employees Union v.
Texas Workforce Comm'n, 16 S.W.3d 61, 66-67 (Tex. App.--Austin 2000, no pet.);
University of Texas System v. Courtney, 946 S.W.2d 464, 469 (Tex. App.--Fort Worth
1997, writ denied); Bohannan v. Texas Bd. of Criminal Justice, 942 S.W.2d 113, 118 (Tex.
App.--Austin 1997, writ denied).

 The trial court had jurisdiction to consider Rao's request for equitable relief. Tech's
first issue is overruled.

Failure to State Reasons for Issuance

 In pertinent part, Rule of Civil Procedure 683 provides that every order granting an
injunction or restraining order "shall set forth the reasons for its issuance; shall be specific
in terms; [and] shall describe in reasonable detail and not by reference to the complaint
or other document, the act or acts sought to be restrained . . . ." Under its second issue,
Tech's challenge is limited to the asserted failure of the temporary injunction to set forth
the reasons for its issuance. In the order granting the temporary injunction, the trial court
found that Rao "tendered evidence of imminent harm, irreparable injury and an inadequate
legal remedy."

 In advancing its challenge, Tech points out the admonition in Interfirst Bank San
Felipe, N.A. v. Paz Construction Company, 715 S.W.2d 640 (Tex. 1986), that the
"requirements of Rule 683 are mandatory and must be strictly followed." Id. at 641. 
Particularly citing Northcutt v. Warren, 326 S.W.2d 10 (Tex. Civ. App.--Texarkana 1959,
writ ref'd n.r.e.), and University Interscholastic League v. Torres, 616 S.W.2d 355, 358
(Tex. Civ. App.--San Antonio 1981, no writ), Tech contends that the reasons stated by the
trial court for its issuance of the temporary injunction were mere conclusory statements and
were insufficient to comply with Rule 683 requirements of specificity.

 Rao responds that this question was not preserved for appellate review because
Tech never made any trial court complaint on the basis it now raises. In relevant part,
Texas Rule of Appellate Procedure 33.1(a) provides that as a prerequisite to presenting
a complaint for appellate review, the record must show that the complaint was timely
presented to the trial court with sufficient specificity to make the trial court aware of the
grounds for complaint unless the specific grounds were apparent from the context. At the
injunction hearing, no presentation or objection was made to the temporary injunction on
the basis now raised by Tech.

 There is a split of authority on the question of whether a party can waive the right
to complain of a failure of a temporary injunction to comply with Rule 683. While the Texas
Supreme Court has not written on the subject, the great majority of the Courts of Appeal
who have considered the question, without a great deal of discussion, have concluded that
the instruction of the court in Paz that the requirements of Rule 683 are mandatory means
that the right to make appellate complaint of a failure to strictly comply with the rule is not
waived by the failure to make a trial court complaint on that basis. See Big D Properties,
Inc. v. Foster, 2 S.W.3d 21, 23 (Tex. App.--Fort Worth 1999, no writ), and 360 Degree
Communications Co. v. Grundman, 937 S.W.2d 574, 575 (Tex. App.--Texarkana 1996, no
writ). 

 However, in Emerson v. Fires Out, Inc., 735 S.W.2d 492 (Tex. App.--Austin 1987,
no writ), an appeal from the grant of a temporary injunction, the court noted that the
general principles of sound judicial administration would appear to require that any
objections to the form and content of an injunction be pointed out to the trial court at a time
when the errors could be corrected. It further observed that "[i]t serves no good purpose
to permit appellants to lie in wait and present this error in form for the first time on appeal." 
Id. at 494. Applying Texas Rule of Appellate Procedure 52(a), the progenitor of present
Rule 33.1(a), the court held that the failure to make a trial objection to the form of the
injunction waived the right to an appellate complaint on that basis. Id. at 493-94. We
agree with that reasoning.

 Bottomed on its premise that its right to complain was not waived, Tech also argues
that the trial court's stated reasons for issuing the injunction were not sufficiently specific
to meet the requirements of Rule 683. In doing so, it cites and relies upon University
Interscholastic League v. Torres, 616 S.W.2d 355 (Tex. Civ. App.--San Antonio 1981, no
writ). In that case, the court opined that a recitation of "no adequate remedy at law" and
"irreparable harm" was conclusory and not sufficient to comply with Rule 683. Id. at 358. 
 However, in the recent case of Pinebrook Properties, Ltd. v. Brookhaven Lake Prop.
Owners Ass'n, 77 S.W.3d 487 (Tex. App.--Texarkana 2002, pet. denied), the court held
that a recitation of the reasons an injunction issued was because the defendants had no
adequate remedy at law, the rights involved were unique and irreplaceable, and money
damages would not be a sufficient remedy were sufficient to meet Rule 683 requisites. Id.
at 504-05. We agree with that holding. The reasons listed in the injunction before us are
very similar to those before the Pinebrook court and are sufficient to comply with Rule 683.
For the above reasons, Tech's second issue is overruled.

Failure to Establish Probability of Recovery


 To be entitled to a temporary injunction, an applicant must show a probable injury
and a probable right to recover at the final hearing. Walling v. Metcalfe, 863 S.W.2d 56,
57 (Tex. 1993). The decision to grant or deny a temporary injunction will only be reversed
on a showing of an abuse of discretion. Anderson Chemical Company, Inc. v. Green, 66
S.W.3d 434, 437 (Tex. App.--Amarillo 2001, no pet.). A trial court abuses its discretion
when it misapplies the law to the facts or when the evidence does not reasonably support
the findings. Id. In making our review, we draw all legitimate inferences from the
evidence in the light most favorable to the trial court's judgment. Id. Where, as here, the
trial court made no findings of fact and conclusions of law, the judgment may be upheld
on any legal theory supported by the evidence. Id.

 Tech argues that the injunction was improperly entered because there is no
evidence showing that Rao was expelled for having engaged in protected speech. In
relevant part, article I, section 8 of the Texas Constitution provides: "Every person shall
be at liberty to speak, write or publish his opinions on any subject . . . ." Those free
speech rights are greater than those protected by the First Amendment to the United
States Constitution. See e.g., Davenport v. Garcia, 834 S.W.2d 4, 10-12 (Tex. 1992);
Alcorn v. Vaksman, 877 S.W.2d at 401. The Texas Constitution, in positive terms,
guarantees that every person has the right to speak, write, or publish their opinion on any
subject, while the Federal Constitution expresses First Amendment rights in negative terms
and simply restricts governmental interference with such freedoms. Jones v. Memorial
Hosp. System, 746 S.W.2d 891, 893 (Tex. App.--Houston [1st Dist.] 1988, no writ). Even
though a difference exists between the two guarantees, federal cases have historically
been looked to by Texas courts as an aid in determining free speech questions. The
reasoning of the Texas courts being if the evidence is sufficient to show a violation of
federal standards, it must also be sufficient to show a violation of state guarantees. See
e.g., Vaksman, 877 S.W.2d at 401.

 Whether speech addresses a matter of public concern is determined by the content,
form, and context of the speech. Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684,
1690, 75 L.Ed.2d 708 (1983). When the speech relates to any matter of political, social,
or other concern to the community, it addresses a matter of public concern and it is not
necessary that the speech allege a breach of public trust. Id. 461 U.S. at 146. Indeed, the
Supreme Court has held that a public employee's comment in regard to an attempt upon
the life of the President of the United States to the effect that if another attempt was made
to assassinate the President, ". . . I hope they get him," was a comment about a matter of
public concern. Rankin v. McPherson, 483 U.S. 378, 386-87, 107 S.Ct. 2891, 2898, 97
L.Ed.2d 315 (1987).

 In Mt. Healthy City Sch. Dist. Bd. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d
471 (1977), a school district had failed to rehire a non-tenured teacher because of, among
other things, a telephone call made to a local radio station. The Court set out the
standards by which an individual's entitlement to constitutionally protected free speech
would be determined. Under that test, the individual must have shown (1) his conduct was
protected, and 2) his conduct was a motivating factor in the action for which he seeks
relief. Id. 429 U.S. at 287. 

 We agree with Tech that for Rao's speech activities to be constitutionally protected,
they must have addressed a matter of public concern. Id. His column was printed in the
university newspaper, a publication which the trial judge could reasonably conclude was
of general circulation. Further, the column dealt with forensic pathology and medical
technique, matters which the trial judge could reasonably conclude were of public interest
and concern. Additionally, the record reveals that Dr. Spencer's complaint was fact
intensive in the sense that it was directed at the references made by Rao in the column.

 While it is true that certain conduct might be proscribed that has an incidental
limitation on speech, such a proscription must further an important public interest, be
unrelated to a general suppression of free speech, and be no greater than necessary to
the furtherance of that interest. See e.g.,United States v. O'Brien, 391 U.S. 367, 385, 88
S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968) (finding valid a federal law criminalizing the
destruction or mutilation of a draft registration against a First Amendment challenge). 
Under the testimony here, the trial judge could reasonably conclude Rao's conduct did not
fit within those incidental limits. Viewed in the light by which we must view it in this limited
interlocutory appeal, we cannot say the trial judge abused his discretion in granting the 
temporary injunction. Tech's third issue is overruled.

Over Broad

 We must next consider Tech's fourth issue in which it contends the temporary
injunction is overly broad. In presenting this issue, Tech avers that paragraphs 8(d), 8(e),
and 8(l) are overly broad. In paragraph 8(d), and in relevant part, Tech is enjoined from
making, condoning, or permitting "any statements to the effect that Rao has been expelled
from the curriculum, that he has committed any conduct worthy of expulsion, or that he
should be expelled from the curriculum." Paragraph 8(e), in relevant part, provides that
Tech "shall not make - or condone or permit any faculty, staff or member of the
administration to make - any statements to the effect that Rao's autopsy article reveals that
he lacks a moral compass or has a broken moral compass." In relevant part, paragraph
8(l) provides that Tech "shall not do any thing, or make any oral or written statement, that
would have the effect of interfering with Rao's ability to sit for any other examinations -licensing or otherwise - or interfering in any manner with Rao's participation in the medical
school curriculum pending the trial of this cause."

 Tech argues the above provisions are so broad and subject to subjective
interpretation that "they virtually deprive" Tech of reasonable notice of what it is prohibited
from doing. In particular, it reasons that to be enjoined from making statements "to the
effect" that Rao lacks a moral compass "could include almost any negative statement
regarding Rao." It also posits that to be enjoined from making any statement or doing
anything that would have the effect of interfering "in any manner" with Rao's participation
in the medical school curriculum "is so broad that it could include acts or statements that
no reasonable person could anticipate as being embraced within the scope of the order." 
Accordingly, it argues, in those regards, the acts proscribed in the injunction are not
sufficiently specific.

 We agree that in certain aspects, the injunction is over broad and should be
modified (3) in the following respects: 

 Paragraph 8 is modified to read as follows:


 d. Texas Tech shall not make any statements that Rao has been expelled
from the curriculum or that he has committed any conduct worthy of
expulsion. This is not intended, and shall not be construed as limiting the
Defendant's handling and defense of this litigation.


 e. This subparagraph is deleted from the injunction.


 l. Pending the trial of this cause, Texas Tech will allow Rao to sit for
examinations - licensing or otherwise - customarily incident to Rao's studies
pending the final disposition of this cause and will allow him to participate in
the medical school curriculum pending such trial.


To the extent we have modified the temporary injunction, Tech's fourth issue is overruled.

 In summary, all of Tech's issues are overruled, with the exception that its fourth
issue is granted to the extent of the modification of paragraph 8 set out above. 
Accordingly, with the exception of the modification we have set out, the judgment of the
trial court is affirmed. 


 John T. Boyd

 Senior Justice


Quinn, J., not participating.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Attending an autopsy is part of the medical school curriculum.
3. Tex. R. App. P. 43.2(b).